## 42912. BADGER MUTUAL INSURANCE COMPANY v. HANCOCK.

DEEN, Judge. 1. The plaintiff's comprehensive homeowner's insurance policy covered appurtenant private structures, as to which it was provided: "This coverage does not include (a) any structure used in whole or in part for commercial, manufacturing or farming purposes." The garage burned. The evidence is undisputed that two activities were being conducted therein: (1) the plaintiff's husband brought in approximately eight used stock racing cars per month which he repaired in the garage and then resold, and (2) a part of the garage had been rented out to other persons who had conducted a tire recapping business there; at the time of the fire the partnership running the tire recap business had broken up and the plaintiff's husband had purchased a half interest in it; the machinery remained in the garage and the new owners had purchased and had delivered some 250 tires to be recapped and had also solicited business from others. These constituted commercial uses which removed the building from coverage protection. A contrary ruling is not required by *State Farm Fire &c. Co. v. Rowland*, 111 Ga. App. 743 (143 SE2d 193) which withheld coverage from appurtenant structures "used in whole or in part for mercantile, manufacturing or farming purposes." The word "mercantile" was given its narrow and common signification in that case as applying to the business of merchants, trade, or the buying and selling of commodities. "*Commercial* suggests the larger aspects of the operations of exchange; *mercantile*, the actual buying and selling of commodities." Webster's New International Dictionary, 2d Ed. Thus, the plaintiff's husband was at the time of the fire actually carrying on two commercial enterprises in connection with the garage, which was used to house the tools and as a place of doing the work. The loss

of the building by fire was therefore not covered under the terms of the policy.

2. Plaintiff's counsel states in his brief, however, that the issue is not whether coverage on the garage was excluded but whether the company was estopped to assert this exemption. The policy stipulates: "No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto." While the insurance agent categorically denied any knowledge of the business activities of the plaintiff's husband, she testified: "He explained to me he knew what kind of business was going on behind the house," referring to the work of repairing automobiles prior to resale, and also that "when I renewed my policy with him last year, he knew the recapping equipment was there." We are dealing here not with the waiver of a forfeiture provision, but with a limitation of coverage contained in the policy itself, which the plaintiff contends has been extended by implication because of the knowledge of the local agent of the uses to which the structure was being put. "The limitations placed upon the authority of the defendant's agents to waive provisions of the policy are contained only in the policy itself and consequently refer only to matters occurring subsequently to the issuance of the policy." *Bankers Fire & Marine Ins. Co. v. Hopkins,* 93 Ga. App. 246 (2) (91 SE2d 298). The policy in question was first taken out in 1960 and was renewed in 1963 prior to the defendant's husband purchasing the tires for recapping and doing other acts involved in carrying on the tire recapping business which he had taken over; although he contended that he intended to commence operations in September, the evidence shows without dispute that on August 20, when the fire occurred, his business operations had been commenced, and that this was at a time after the policy had been renewed. It does not appear from the policy or any evidence offered on the motion for summary judgment that a separate premium was charged for the inclusion of the garage in the fire protection provisions of the homeowner's policy to the extent of 1/10 of the stated overall coverage, and it does appear that such additional coverage existed only under the stated provision that the garage was not being used at the time for commercial purposes. The situation is analogous to that existing in

264

*Great American Indem. Co. v. Southern Feed Stores,* 51 Ga. App. 591 (181 SE 115), where the building was insured against robbery only during times when a custodian was in the building, and, after a loss occurring while the custodian was outside the building, the insured contended the insurer was estopped to urge this defense because of knowledge on the part of the agent at the time the policy was written that there was not a custodian in the building at all times. The court held (headnote 3): "There can be no such waiver as to matters occurring subsequently to the issuance of the policy, or estoppel of the insurer as to future matters. The insurer had the right to assume that the insured would, after the issuance and acceptance of the policy, conform to the provisions thereof in the manner of conducting its business." The trial court erred in denying the motion for summary judgment.

*Judgment reversed. Jordan, P. J., and Quillian, J., concur.*

ARGUED JUNE 30, 1967—DECIDED SEPTEMBER 5, 1967.

*Erwin, Birchmore & Epting, Nicholas P. Chilivis,* for appellant.

*Hudson & Stula, Jim Hudson, Stewart, Sartain & Carey, Jack M. Carey,* for appellee.