JAMES E. DURHAM, JR., PENELOPE K. DURHAM, AND MID-STATE HOMES, INC. v. THOMAS V. COX, INDIVIDUALLY, AND D/B/A TOM COX INSURANCE AGENCY, AND NATIONWIDE MUTUAL FIRE INSURANCE COMPANY

No. 823SC1048

(Filed 3 January 1984)

Insurance § 128.1— fire insurance policy—provision excluding coverage on structures used for business purposes—waiver

The "business use" provision in a fire insurance policy which stated "This coverage excludes structures used in whole or part for business purposes" was a condition working a forfeiture, which could impliedly be waived by the acts and conduct of the insurer. The doctrines of implied waiver and estoppel properly apply to such a provision since the property itself, an appurtenant structure, and the risk, loss due to fire, were already within the coverage of the policy. The "appurtenant structure" described in the policy was used by plaintiffs to do upholstery work, and all of the HO-48 endorsements issued to plaintiff described the covered appurtenant structure as a "garage building used for storage and upholstery work." At the time plaintiff applied for insurance, he listed his occupation as "upholstery" and stated that he was "self-employed." Plaintiff contended that he informed the insurance company's agent that he intended to construct a garage to be used in his business prior to the issuance of the first HO-48 endorsements covering the appurtenant structure. Once the garage was constructed and his business established therein, plaintiff again, according to his deposition, informed the agent Cox that he was using the structure in connection with his upholstery business. A third HO-48 was issued, increasing coverage to $10,000.00 on a "garage used for storage and upholstery work." Thus, there was evidence that the insurance company, through its agent, expressly agreed to assume whatever enhanced risk was posed to the structure by plaintiffs' upholstery work.

APPEAL by plaintiffs from *Reid, Judge.* Judgment entered 15 July 1982 in Superior Court, CRAVEN County. Heard in the Court of Appeals 26 August 1983.

This is an action to recover damages incurred by plaintiff when a garage or workshop building he used to house his business, "Durham's Woodcrafts," was destroyed by fire on 3 November 1979. Plaintiffs alleged alternative claims for relief in contract and tort against defendant, Thomas V. Cox, individually and d/b/a Tom Cox Insurance Agency (Cox) and defendant, Nationwide Mutual Fire Insurance Company (Nationwide). In their first claim for relief, plaintiffs seek recovery of damages from defendants by reason of the defendants' breach of the policy insuring plaintiff's appurtenant structure against loss from fire. In their second, alternative claim for relief, plaintiffs seek recovery against Nationwide and Nationwide's agent, Thomas Cox, for negligent failure to procure coverage for the appurtenant structure. Both defendants answered, denying the material allegations of the complaint and raising, *inter alia*, the affirmative defense that language contained in the policy excludes coverage for structures used in whole or part for business purposes, and therefore acts as a bar to plaintiff's cause of action.

All parties filed motions for summary judgment. Plaintiffs, James E. Durham, Jr. and his wife, Penelope K. Durham, were deposed, and their depositions, together with the pleadings, defendants' answers to interrogatories and admissions on file were presented to the trial court. After hearing argument, the court entered an order denying plaintiffs' motion for summary judgment, granting defendant Nationwide's motion for summary judgment on both claims, granting the motion for summary judgment filed by Thomas V. Cox, individually and d/b/a Tom Cox Insurance Agency, insofar as it related to plaintiffs' contract claim and leaving plaintiffs' claim for negligent failure to procure insurance against Cox intact. From entry of this order, plaintiffs appeal.

*Ward, Ward, Willey & Ward, by Joshua W. Willey, Jr., for plaintiff appellant.*

*Ward and Smith, P.A., by Thomas E. Harris, for defendant appellee Thomas V. Cox, individually and d/b/a Tom Cox Insurance Agency.*

*Sumrell, Sugg & Carmichael, by James R. Sugg and Rudolph A. Ashton, III, for defendant appellee Nationwide Mutual Fire Insurance Company.*

JOHNSON, Judge.

Plaintiffs' appeal presents two questions for review, whether the trial court erred in granting summary judgment in favor of defendants Nationwide and Cox with respect to plaintiffs' breach of contract claim and in granting summary judgment in favor of Nationwide on plaintiffs' alternative claim of negligent failure to procure insurance coverage. We find error and reverse.

The evidentiary showing on the summary judgment motion is as follows: At all times pertinent to plaintiffs' claims, the defendant Nationwide and the defendant Cox were parties to a written agreement entitled, "Agent's Agreement," which designated Thomas V. Cox as agent to represent Nationwide Mutual Fire Insurance Company in North Carolina. In this written agreement Nationwide designated Cox as its agent with authority to solicit, negotiate, and effect contracts of insurance in its behalf, and to collect premiums thereon.

Acting pursuant to the above-referenced authority in December, 1977, Cox assisted the plaintiff James Durham in the preparation of an application for homeowner's insurance. The application states that James E. Durham is self-employed and that his occupation is upholstery. According to James Durham's deposition, he told Cox at that time that he was on disability, but was working part-time doing upholstery and refinishing. The plaintiffs contend and defendants deny that during this initial conference James Durham told Cox that he was going to build an appurtenant structure on the premises to be used in his business.

As a result of these negotiations, the defendant Nationwide issued a homeowner's policy which bore effective dates of 17 December 1977 through 17 December 1980. The policy named James E. Durham, Jr. and wife, Penelope K. Durham, as the insured parties and named Mid-State Homes, Inc. as the loss mortgagee. This policy, as initially issued, afforded $2,500 coverage on the appurtenant structure, described as a "garage building used for storage and upholstery work."

The subject policy provided the following language under coverage on appurtenant structures: "This coverage excludes structures used in whole or part for business purposes." Lines 49 through 52 on the back of the first page of the policy contain the

following language: "No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto."

Plaintiffs subsequently built a detached garage building or workshop on the premises and requested that the defendant Cox increase their appurtenant structure coverage to $5,000. Plaintiffs contend and defendants deny that when James Durham requested increased coverage on the appurtenant structure he advised the defendant Cox the appurtenant structure was going to be used for storage and upholstery and refinishing. Further, that Durham advised Cox that his equipment and tools had not yet arrived, but that as soon as they did, he would want to change the insurance on it. As a result of the plaintiffs' request, Nationwide issued an "HO-48" in June, 1978 which changed the appurtenant structure coverage under the homeowner's policy by increasing it to $5,000. An HO-48 is an endorsement used in the insurance industry for the purpose of increasing the limit of liability, as specified in the original policy, on an appurtenant structure. The June, 1978 HO-48 also described the subject appurtenant structure as a "garage building used for storage and upholstery work."

Subsequently, James Durham installed his upholstery and refinishing tools in the structure and began openly operating his business in the building. Additionally, Durham was advertising his business extensively. The plaintiffs contend and the defendants deny that James Durham then went to Cox, advised him that he was at that time actively operating his upholstery business in the subject appurtenant structure and requested a premium quote on a policy of business insurance covering the appurtenant structure and the tools located therein. Durham stated in his deposition that Cox told him that for $800 he could insure his tools, his building and the business itself and Durham decided that he could not afford such a high premium as he was just starting in business. The plaintiffs contend and the defendants deny that Cox then advised Durham that he could obtain additional coverage on the building by obtaining the issuance of a change endorsement on the homeowner's policy and that Cox further advised Durham that by increasing the appurtenant structure coverage under the homeowner's policy he would cover the building but not the tools.

As a result, plaintiffs requested and Nationwide issued, effective December, 1978, an HO-48 which also described the appurtenant structure as a "garage building used for storage and upholstery work." As a result of the increased appurtenant structure coverage, the plaintiffs were billed for and paid an additional premium. These payments of premium were accepted by the defendants. No written waiver of the business use exclusion was obtained by plaintiffs. On 3 November 1979, the garage was destroyed by fire. The defendants refused and have failed to pay for the loss. We turn first to the issues raised by the grant of summary judgment in favor of the defendant insurance company and its agent on plaintiff's contract claim.

Summary judgment is the device whereby judgment is rendered if the pleadings, depositions, interrogatories, and admissions of file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. G.S. 1A-1, Rule 56; *see* 10 C. Wright A. Miller & Kane, Federal Practice and Procedure, § 2711 (1983). The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of material fact by the record properly before the court. *Caldwell v. Deese,* 288 N.C. 375, 218 S.E. 2d 379 (1975); 10A C. Wright A. Miller & Kane, *supra,* § 2727. In *Johnson v. Insurance Co.,* 300 N.C. 247, 253, 266 S.E. 2d 610, 615 (1980), our Supreme Court again delineated the nature of appellate review of the grant of summary judgment as a matter of law on a particular claim.

> Summary judgment may not be imposed in a vacuum. The examination of the propriety of its entry must not conclude with the determination that there are no genuine issues of material fact. The very terms of Rule 56 require that it also be established that the movant be entitled to judgment as a matter of law. The second prong of the test may be effected only when the evidence which is offered in support of the motion is examined in light of the substantive rules of law as they relate to a plaintiff's claim for relief.

Defendants argue that summary judgment was correctly granted because the uncontradicted facts establish that at the time of the fire, the plaintiffs' garage was being used for business purposes; the policy by its terms excludes coverage of appurte-

nant structures used in whole or in part for business purposes; such an exclusion is a matter of coverage which cannot be expanded by application of the doctrine of waiver or estoppel; and, there being no factual dispute, the insurance contract excluded as a matter of law coverage for plaintiffs' appurtenant structure.

Plaintiffs contend that the business use exclusion clause is a forfeiture provision which, despite policy provisions to the contrary, may be waived by the acts and/or conduct of the insurer and that genuine issues of material fact exist with respect to the question of waiver; specifically, whether the agent Cox had notice or knowledge of the business use to which the appurtenant structure was being put, in breach of the policy provision, at any relevant time prior to the time of the loss.

Our courts have long followed the general rule that the doctrines of waiver and estoppel are not available to bring within the coverage of an insurance policy risks not covered by its terms, or risks expressly excluded therefrom. *Hunter v. Insurance Co.*, 241 N.C. 593, 86 S.E. 2d 78 (1955); *McCabe v. Casualty Co.*, 209 N.C. 577, 183 S.E. 743 (1936); *Currie v. Insurance Co.*, 17 N.C. App. 458, 194 S.E. 2d 642 (1973). *See generally* Annot., 1 A.L.R. 3d 1139 (1965) and 16B Appleman, Insurance Law and Practice, § 9090 (1981).

In *Hunter v. Insurance Co.*, *supra* at 595-596, 86 S.E. 2d at 80, the Supreme Court quoted the following formulations of the majority rule:

"The doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom; and the application of the doctrine in this respect is, therefore, to be distinguished from the waiver of, or estoppel to deny, grounds of forfeiture."

*        *        *

"As a general rule, the doctrines of waiver or estoppel can have a field of operation only when the subject matter is within the terms of the contract, and they cannot operate radically to change the terms of the policy so as to cover ad-

Durham v. Cox

ditional subject matter. Accordingly, it has been held by the weight of authority that waiver or estoppel cannot create a contract of insurance or so apply as to bring within the coverage of the policy property, or a loss or risk, which by the terms of the policy is expressly excepted or otherwise excluded."

It is undisputed that the subject homeowner's policy contained a provision which excluded coverage for appurtenant structures "used in whole or in part for business purposes," and that James Durham was using his garage in connection with his upholstery and furniture refinishing business at the time of the fire. Thus, the initial question raised by this appeal is whether insurers can, by their acts and conduct, waive the right to rely upon a business use exclusion to avoid a homeowner's insurance policy.

Although our courts have found many policy provisions by which insurance companies seek to avoid liability to be forfeiture provisions, and therefore waivable, the question of whether a business use exclusion is a forfeiture provision is one of first impression in this jurisdiction. It would appear that the only provisions which thus far have been judicially determined to be conditions of coverage rather than forfeiture are age limitation provisions in life insurance policies. *See Hunter v. Insurance Co., supra, McCabe v. Casualty Co., supra, and Currie v. Insurance Co., supra.* In these cases an evident concern of the courts was the imposition upon the insurer of risks which, by the terms of the policy, it is obvious that it elected not to assume.

The general rules as to waiver of conditions in property insurance policies working a forfeiture were stated by our Supreme Court in *Horton v. Insurance Co.,* 122 N.C. 498, 503-504, 29 S.E. 944, 945-946 (1898), and may be summarized as follows:

1. It is well settled in this State that the knowledge of the local agent of an insurance company is, in law, the knowledge of the principal; that the conditions in a policy working a forfeiture are matters of contract and not of limitation, and may be waived by the insurer, and that such waiver may be presumed from the acts of the agent.

2. When the insurer, knowing the facts, does that which is inconsistent with its intention to insist upon a strict compliance with the conditions precedent of the contract, it is treated as having waived their performance, and the assured may recover without proving performance, and that, too, even though the policy provides that one of its conditions shall be waived except by written agreement.

3. The breach of any condition in the policy, as against an increase of risk or the keeping of certain hazardous goods . . . or, indeed, the violation of any of the conditions of the policy, may be waived by the insurer, and a waiver may be implied from the acts and conduct of the insurer after knowledge that such conditions have been broken.

In *Horton*, the condition of a fire insurance policy stating that it should become void if foreclosure proceedings should be begun or notice given of the sale, by virtue of mortgage or deed, of any property covered by the policy, was held to be impliedly waived by the conduct of the insurer. The rule of waiver has also been applied to provisions regarding title and interest, *Aldridge v. Insurance Co.*, 194 N.C. 683, 140 S.E. 706 (1927); *Hicks v. Insurance Co.*, 226 N.C. 614, 39 S.E. 2d 914 (1946) (other or additional insurance provisions); *Fire Fighters Club v. Casualty Co.*, 259 N.C. 582, 131 S.E. 2d 430 (1963) (vacancy or unoccupancy clauses); *Supply Co. v. Insurance Co.*, 49 N.C. App. 616, 272 S.E. 2d 394 (1980); and *Faircloth v. Insurance Co.*, 253 N.C. 522, 117 S.E. 2d 404 (1960) (clauses controlling location and removal of personal property).

The general rule, implicitly recognized in the foregoing cases, is summarized in 8 Couch on Insurance 2d, § 37:781, p. 372 (1959), as follows:

Representations, warranties, and conditions with respect to the use and occupancy of premises or property insured may, like other provisions which are for the benefit of the insurer, be waived by it, or it may become estopped to set up such a statement or the breach of such a condition in defense to an action on the policy. *Similarly, conditions prohibiting change of use are for the benefit of the insurer, and may be waived by it or its authorized agent.*

*See also* 17 Appleman, *supra,* §§ 9561 *et seq.;* §§ 9601 *et seq.* (provisions for avoidance of a fire policy for change of use or increase of hazard are forfeiture provisions subject to doctrines of implied waiver or estoppel) and 44 Am. Jur. 2d, Insurance, §§ 1571 *et seq.* (1982). *See generally* 45 C.J.S., Insurance, §§ 672 *et seq.* (1946).

We conclude that the "business use" provision regarding appurtenant structures in the subject homeowners policy is a condition working a forfeiture, which may be impliedly waived by the acts and conduct of the insurer. The doctrines of implied waiver and estoppel properly apply to such a provision since the property itself, an appurtenant structure, and the risk, loss due to fire, are already within the coverage of the policy. *Compare Hunter v. Insurance Co., supra.* The difference between "accepted" and "excepted" risk is aptly pointed out in *Keistler Co. v. Aetna Ins. Co.,* 124 S.C. 32, 117 S.E. 70, 73 (1923), where the court stated:

> The distinction between an accepted risk to be defeated by conditions set forth in the policy and an excepted risk is clear, and it is logical to hold that it takes a new contract to cover an excepted risk. By way of illustration: A. has a plantation on which there are 10 buildings. All are covered by a policy of insurance, but the policy provides that, in case A. shall store certain inflammable materials in any of the houses, then the insurance on that building shall instantly cease. That is an assumed risk, which will be void upon a condition subsequent. B. has a plantation upon which there are 10 buildings; 9 of them are covered by a policy of insurance. Building No. 10 is excluded from the policy. It is entirely logical to hold that it takes a new contract to include insurance on B.'s No. 10, but not on A.'s No. 10.

The policy provision concerning business use is analogous to the provision against storage of inflammable materials in the foregoing illustration in that both may be said to enhance a risk already assumed by the insurer. Therefore, a "business use" of the covered property may properly be considered as a condition subsequent, the occurrence of which renders the assumed risk voidable. Thus, the insurer, through its acts or conduct, may impliedly waive or be estopped to deny its right to avoid liability. It is evident, then, that application of these doctrines does not

radically alter, or have the effect of "rewriting," the subject policy. Furthermore, conditions regarding permissible or prohibited uses to which the property may be put are clearly inserted in the policy for the benefit of the insurer and therefore may properly be waived by it or its authorized agent.

We note also that our holding is consistent with the treatment accorded property use provisions in other jurisdictions. *See Security Insurance Co. of New Haven v. Greer*, 437 P. 2d 243 (Okla. 1968) (stipulation limiting insurer's liability for loss of property fully within excepted impermissible uses may be impliedly waived); *De Noyelles v. Delaware Ins. Co.*, 78 Misc. 649, 138 N.Y.S. 855 (1912) (insured's breach of warranty of use of premises for dwelling purposes is waived where insurer issued policy and accepted premium with knowledge that the building was occupied by a drug store and a manicuring business). *But see Badger Mut. Ins. Co. v. Hancock*, 116 Ga. App. 262, 157 S.E. 2d 58 (1967) (insured could not recover for fire loss of garage, used for commercial purposes within homeowner's policy exclusion provision on the theory of estoppel where policy was first issued and renewed prior to prohibited use, separate premium was not charged for inclusion of garage and such additional coverage existed only under provision that garage was not used for commercial purposes).

Moreover, application of the doctrine of implied waiver in the case under discussion is particularly appropriate because all of the HO-48 endorsements issued to plaintiffs described the covered appurtenant structure as a "garage building used for storage and upholstery work." At the time James Durham applied for insurance, he listed his occupation as "upholstery" and stated that he was "self-employed." Durham contends that he informed the insurance company's agent that he intended to construct a garage to be used in his business prior to the issuance of the first two HO-48 endorsements covering the appurtenant structure. Once the garage was constructed and his business established therein, Durham again, according to his deposition, informed the agent Cox that he was using the structure in connection with his upholstery business. A third HO-48 was issued, increasing coverage to $10,000 on a "garage used for storage and upholstery work." Thus, there is evidence that the insurance company, through its agent, expressly agreed to assume whatever enhanced risk was posed to the structure by plaintiffs' upholstery work.

It is plaintiffs' contention that the facts show the insurer learned of conditions which would work a forfeiture under the terms of the policy after issuance of the initial homeowner's policy and prior to issuance of the subsequent HO-48 raising its liability to $10,000; but that the insurer nonetheless failed to cancel the policy and charged and collected increased premiums. In *Faircloth v. Insurance Co., supra,* the policy provided coverage against "All direct loss by fire . . . to the property described hereinafter while located or contained as described in this policy . . . but not elsewhere." Shortly after issuance of the policy, Faircloth advised the insurance agent that the property was being moved from the insured location in Raleigh to Shallotte. The agent instructed Faircloth to pay an additional charge to cover the cost of extending coverage to the new location, and the charge was paid. The Supreme Court held that by continuing to collect premiums on the policy and by failing to cancel the same, the insurance company had waived the right to rely upon the condition of forfeiture. In a similar situation, this Court, in *Stuart v. Insurance Co.,* 18 N.C. App. 518, 522, 197 S.E. 2d 250, 253 (1973), observed,

> It cannot be assumed that the defendant intended to accept premiums upon a policy which it knew did not extend coverage.

Therefore, we conclude that the evidentiary forecast does not establish the fact that coverage under the policy was excluded as a matter of law.

Defendant Nationwide makes three further arguments with regard to this issue which we will briefly address. The first argument concerns the policy provision regarding waiver only by express written agreement. In *Horton v. Insurance Co., supra,* the Supreme Court expressly stated that the insured, in a proper case, may recover on the theory of implied waiver, "even though the policy provides that none of its conditions shall be waived except by written agreement." 122 N.C. at 504, 29 S.E. at 946. Accordingly, we find no merit in defendant's first argument.

The second argument concerns the plaintiffs' notice of the business use exclusion. In *Supply Co. v. Insurance Co., supra,* this Court laid the issue to rest as follows:

The question of whether plaintiffs [the insured] had notice, constructive or actual, that the policy contained such a provision has *no bearing* on the liability of Reliance [the insurer]. *Such notice on the part of plaintiff would not estop plaintiffs from asserting coverage.* (Emphasis added.)

49 N.C. App. at 623, 272 S.E. 2d at 398.

In this third argument, Nationwide argues that, should this Court find that coverage is not excluded as a matter of law, any factual issue is between plaintiffs and defendant Cox. Nationwide contends that it was not put on notice of a condition that would void the policy by reason of either Durham's application or the endorsements describing the garage. In *Faircloth v. Insurance Co.*, 253 N.C. at 528, 117 S.E. 2d at 408, the Supreme Court stated that,

[I]n the absence of fraud or collusion between the insured and the agent, the knowledge of the agent when acting within the scope of the powers entrusted to him will be imputed to the company, though a direct stipulation to the contrary appears in the policy or the application for the same.

Again, we find no merit in the argument by which defendant Nationwide seeks to avoid liability under the policy issued to plaintiffs.

In conclusion, we hold that insurance coverage for plaintiffs' loss under the terms of the policy is not excluded as a matter of law because the business use exclusion is a condition of forfeiture, subject to the doctrines of implied waiver and estoppel. Waiver of a forfeiture provision is a mixed question of law and fact. *Hicks v. Insurance Co., supra.* In the case *sub judice* essentially all facts relating to the question of waiver are controverted. Plaintiffs contend and defendants deny that the company's agent Cox had knowledge of the business use to which the garage was being put at all relevant times. The disputed factual issue raised by the evidentiary forecast is material and essential to a determination of plaintiffs' right to recover under their contract of insurance. Therefore, entry of summary judgment in favor of defendants Cox and Nationwide was inappropriate, and the cause must be remanded to the Superior Court for trial.

We briefly address one further issue raised by plaintiffs' alternative claim for relief. That is, whether the defendant insurance company may be held liable for the negligence of its agent Cox in failing to procure a fire insurance policy under generally accepted principles of agency law. The identical issue was presented and answered in the affirmative by this Court in *Hornby v. Penn. Nat'l Mut. Casualty Ins. Co.*, 62 N.C. App. 419, 303 S.E. 2d 332, *disc. rev. denied*, 309 N.C. 461, 307 S.E. 2d 365 (1983) and *Harrell v. Davenport*, 60 N.C. App. 474, 299 S.E. 2d 308 (1983). Accordingly, summary judgment in favor of Nationwide on plaintiffs' alternative claim for relief on the basis of tort was also inappropriate on the basis of the record thus far presented.

Reversed and remanded.

Judges WHICHARD and EAGLES concur.